IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

JOHNNY MARTINEZ,                          )
                                          )
                    Petitioner,           )
                                          )
vs.                                       )          Civil No. 13-102
                                          )
KEITH FRANCOIS, Warden of the Golden      )
Grove Correctional Facility; JULIUS       )
WILSON, Director of the Virgin Islands    )
Bureau of Corrections; TERRITORY OF       )
THE VIRGIN ISLANDS; and RANDALL           )
MATHENA, Warden of the Red Onion          )
State Prison,                             )
                                          )
                    Respondents.          )
_____ )

## REPORT AND RECOMMENDATION

This case is before the Court for initial screening of *pro se* plaintiff Johnny Martinez's

pleading and the following underlying motions:

(1)  Application to proceed *in forma pauperis* [DE 2] under 28 U.S.C. § 1915(a)(1);
(2)  Motion to Appoint Pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A [DE 3]; and
(3)  Motion for Default Judgment or in the Alternative Motion to Compel the Filing of a Responsive Pleading [DE 12].

On May 1, 2014, the matter was referred to the undersigned for a Report and Recommendation.

## I.    FACTUAL ALLEGATIONS[1]

Petitioner, a state prisoner, initially filed a petition for writ of habeas corpus under 28

U.S.C. § 2241 against defendants Keith Francois, Warden of the Golden Grove Correctional

Facility, Julius Wilson, Director of the Virgin Islands Bureau of Corrections, the Territory of the

---

[1]    The Court sets forth the facts in the light most favorable to petitioner because "th[e] initial assessment of the *in forma pauperis* plaintiff's factual allegations must be weighted in favor of the plaintiff." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (alteration in original) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32 (1992)).

Virgin Islands and Randall Mathena, Warden of the Red Onion State Prison.[2]   Petitioner subsequently filed a combined pleading against defendants for (1) a writ of habeas corpus under § 2241 and (2) a civil rights action pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. § 1331.   *See* 1st Am. Pet. & Comp. ("Am. Pet.") at 6-7, 9 [DE 25].   Petitioner's claims stem from his allegedly unconstitutional interstate transfer from Golden Grove Correctional Facility ("Golden Grove") in the United States Virgin Islands to Red Onion State Prison ("Red Onion") in Virginia – a super-maximum security ("supermax") facility.[3]

According to the amended petition [DE 25], petitioner is presently serving a 35-year sentence for second degree murder in violation of 14 V.I.C. § 923(b).   Am. Pet. ¶¶ 15-16. Petitioner was incarcerated at Golden Grove from the late 1990s to March 2013.   *Id.* ¶ 17. During that time, petitioner was a "model inmate" and "had no material instances of rules/law infractions during his time at Golden Grove and posed no threat (immediate or otherwise) and/or probable danger to security."   *Id.* ¶ 18.[4]   In March 2013, petitioner was transferred to Red Onion without notice or a hearing.   *Id.* ¶ 29, 31 & Exs. B-E.   Petitioner is unaware of any change in his security classification justifying his incarceration at a maximum security facility.   *Id.* ¶ 34.

---

[2]      In his civil rights action, petitioner names Keith Francois and Julius Wilson in their individual and official capacities and names Randal Mathena in his official capacity only.

[3]      *See Wilkinson v. Austin*, 545 U.S. 209, 213 (2005) ("Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population.").

[4]      Petitioner's complaint includes two paragraphs denoted "18."   The reference here is to the first of those two paragraphs.

## II.    COMBINED HABEAS/CIVIL RIGHTS ACTION

The Court addresses first the combined civil action sounding both in habeas and civil rights.  Federal law provides two main avenues of relief related to imprisonment: a petition for habeas corpus, 28 U.S.C. §§ 2241, 2254, or a civil rights complaint under either 42 U.S.C. § 1983 or *Bivens*.  *See Muhammad v. Close*, 540 U.S. 749, 750 (2004); *Carlson v. Green*, 446 U.S. 14, 49 (1980) (observing a civil rights suit under § 1983 is against state officers and under *Bivens* is against federal officers).  "Although both [a civil rights action and] habeas corpus allow prisoners to challenge unconstitutional conduct by state [or federal] officers, the two are not coextensive either in purpose or effect."  *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002) (alterations added).  "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; [] requests for relief turning on circumstances of confinement may be presented in a § 1983 [or *Bivens*] action."  *Muhammad*, 540 U.S. at 750 (alterations added; internal citation omitted).

Moreover, each type of action contains unique procedural requirements.  For example, in actions brought pursuant to 28 U.S.C. §§ 2241 or 2254, the only proper respondent is the warden of the facility where the prisoner is incarcerated.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 450 n.18 (2004); Rules Governing Section 2254 Cases in the United States District Courts ("2254 Rules"), Rule 2(a).[5]  No additional defendants are contemplated.

Also, filing fee requirements differ between civil actions ($350 filing fee) and habeas proceedings ($5 filing fee) for prisoners proceeding *in forma pauperis* ("IFP").[6]   Specifically,

---

[5]      "If the petitioner is currently in custody under a state-court judgment, [as here,] the petition must name as respondent the state officer who has custody."   28 U.S.C. § 2254, Rule 2(a).

[6]      "The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $ 350 except that on application

*Martinez v. Francois et al.*
Civil No. 13-102
Page 4

prisoners proceeding IFP in civil actions must ultimately pay the entire fee pursuant to the Prison

Litigation Reform Act ("PLRA").   *See* 28 U.S.C. § 1915(b)(1).   A prisoner proceeding IFP in a

habeas proceeding, however, is excused from paying the $5 filing fee.   *See McGee v. Scism*, 463

Fed. Appx. 61, 65 (3d Cir. 2012) (explaining "[t]he filing fee payment requirements of the PLRA

do not apply in habeas proceedings").   Furthermore, a habeas petition is not subject to the civil

rights administrative exhaustion requirements contemplated by the PRLA.   *See* 42 U.S.C. §

1997e(a).[7]

    In light of these differences between habeas corpus proceedings and a civil rights action,

the Court finds that petitioner may not file a combined or consolidated petition seeking

alternative remedies, as was done here.[8]

### III.    HABEAS CORPUS PETITION & MOTION FOR DEFAULT JUDGMENT

    Federal district courts have a pre-service duty under Rule 4 of the 2254 Rules, which

applies to § 2241 petitions pursuant to Rule 1(b),[9] to screen and summarily dismiss a habeas

petition prior to any answer or other pleading by the state when the petition "appears legally

---

for a writ of habeas corpus the filing fee shall be $ 5."  28 U.S.C. § 1914(a).  In the Virgin Islands, the filing fee for non-habeas civil cases is $400, which includes a $50 administrative fee.

[7]    "No action shall be brought with respect to prison conditions under . . . 42 U.S.C. [§] 1983[], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (alterations added).

[8]    *Cf. Burnam v. Marberry*, 313 Fed. Appx. 455, 456 n.2 (3d Cir. 2009) (where a prisoner filed an action seeking relief under the Privacy Act and under the Administrative Procedures Act but also repeatedly mentioned 28 U.S.C. § 2241 throughout the filing, and the District Court construed the filing as a Section 2241 petition but also entertained the non-habeas APA claims, the Third criticized the District Court for doing so and declared that the District Court "should not have combined the habeas action and the claims under the Privacy Act and APA into a single case. A better approach would have been to dismiss the habeas petition without prejudice and to focus on the alleged statutory violations, or in the alternative to have still construed the action as one of habeas corpus but to restrict its scope to challenges to the fact or duration of [petitioner's] confinement, or the execution of his sentence").

[9]    *See Wajid Deshields v. Smith*, 176 Fed. Appx. 340, 341 (3d Cir. 2006) (noting 2254 Rules apply to 2241 petitions); *see, e.g., Cross v. Thomas*, 2012 U.S. Dist. LEXIS 106038, at *3 (M.D. Pa. July 30, 2012) (applying Rule 4 to dismiss a section 2241 petition).

insufficient on its face." *McFarland v. Scott*, 512 U.S. 849, 856 (1994); *see United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (explaining habeas petitions may be dismissed where "none of the grounds alleged in the petition would entitle [the petitioner] to relief").

The Court finds that petitioner may not proceed by way of habeas.  First, petitioner's claim does not sound in habeas.  A petition for writ of habeas corpus seeks to challenge the fact or length of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973).  Petitioner, however, does not attack the duration of his incarceration nor does he seek release from prison.  Rather, petitioner challenges the alleged unconstitutional treatment of him while in confinement – that is, his placement in a supermax facility.  While the United States Supreme Court has not answered the question of whether the conditions of confinement may be challenged by way of habeas corpus,[10] the Third Circuit arguably has answered the question in the negative:

> When examining whether *Preiser* and its progeny require a claim to be brought under habeas, unless the claim would fall within the "core of habeas" and *require sooner release if resolved in the plaintiff's favor*, a prison confinement action . . . is properly brought under § 1983.

*Leamer*, 288 F.3d at 542 (emphasis added); *but see Butcher v. Cameron*, 2012 U.S. Dist. LEXIS 71132, at *8 n.2 (W.D. Pa. May 22, 2012) (acknowledging authority to the contrary and collecting cases).  Because a finding in petitioner's favor as to his condition of confinement "would not alter his sentence or undo his conviction," he must proceed by way of a civil rights action.  *Leamer*, 288 F.3d at 542; *see, e.g., Butcher*, 2012 U.S. Dist. LEXIS 71132, at *9 (holding petitioner may not challenge a transfer from a state prison to a county jail by means of a habeas petition but must file a § 1983 action); *Henriquez v. Smeal*, 2011 U.S. Dist. LEXIS

---

[10]     *See Bell v. Wolfish*, 441 U.S. 520, 527 n.6 (1979) ("Thus, we leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself.").

*Martinez v. Francois et al.*
Civil No. 13-102
Page 6

81218, at *4 (M.D. Pa. July 26, 2011) (dismissing petitioner's habeas petition as meritless given "the requested transfer would have [no] effect on the fact or duration of his confinement in prison other than where he would serve the remainder of his present sentence).

Second, to the extent petitioner states a cognizable habeas claim, his reliance on § 2241 is misplaced, as he must proceed under § 2254, and only as to Randall Mathena, the warden of Red Onion.[11]  *See Washington v. Sobina*, 509 F.3d 613, 618 n.5 (3d Cir. 2007) ("We have held that a state prisoner challenging the validity or execution of his state court sentence must rely on the more specific provisions of § 2254 rather than § 2241.").   But, even if petitioner chooses to proceed under § 2254 (again assuming petitioner's claim sounds in habeas), this Court lacks jurisdiction to entertain such a petition.

A federal court may not grant a habeas writ if the prisoner's custodian is outside the court's jurisdiction.  *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95 (1973) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."); *see also* 28 U.S.C. § 2241(a). "Thus, a state prisoner challenging the constitutionality or legality of his custody that is the result of a state court judgment of conviction must file a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 in a judicial district which can acquire in personam jurisdiction over the petitioner's warden or custodian." *Demos v. United States Secy. of Def.*, 2013 U.S. Dist. LEXIS 134517, at *3 (D. Del. Sept. 19, 2013) (citing *Rumsfeld*, 542 U.S. at 434-35).  Here, petitioner is

---

[11]      As noted, the proper respondent, whether under § 2241 or § 2254, is the warden of the institution where the petitioner is incarcerated at the time of filing.  *Rumsfeld*, 542 U.S. at 447.  Here, petitioner erroneously names a variety of respondents in his habeas claim.

incarcerated in Virginia and this Court is located in the U.S. Virgin Islands.  As such, the Court does not have jurisdiction over petitioner's custodian.[12]

Accordingly, the Court RECOMMENDS that petitioner's § 2241 petition for a writ of habeas corpus against all respondents be summarily DISMISSED.  *See* 2254 Rules, Rule 4 ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.").  The Court RECOMMENDS FURTHER that petitioner's motion for default judgment against the Territory of the Virgin Islands, Keith Francois and Julius Wilson be DENIED.[13]

## IV.    CIVIL RIGHTS ACTION

The Prison Litigation Reform Act ("PLRA") requires a court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity.  28 U.S.C. §§ 1915(e)(2)(b) and 1915A.  Specifically, the PRLA directs the court to screen the complaint for cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id*.  Also, a court may consider personal jurisdiction and venue *sua sponte* "when the defense is obvious from the face of the complaint and no further factual record is required to be developed." *Trujillo v. Williams*,

---

[12]    *See, e.g., Wainwright v. Wilson*, 2013 U.S. Dist. LEXIS 88758, at *2-3 (C.D. Ill. June 24, 2013) (holding the court did not have "territorial jurisdiction over petitioner's custodian" under § 2254 where petitioner, although convicted in Illinois, was incarcerated in Virginia).

[13]    Petitioner requests that that Court enter a default judgment against the Territory of the Virgin Islands, Francois and Wilson for failing to file a responsive pleading or alternatively, that the Court require the filing of a responsive pleading.  [DE 12].  A respondent is not obligated to respond to a habeas petition until after the court "promptly examine[s] it" and determines whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." 2254 Rules, Rule 4.  Only if the petition is not dismissed will the court "order the respondent to file an answer, motion, or other response within a fixed time."  *Id*.

465 F.3d 1210, 1216-17 (10th Cir. 2006) (quotation omitted).  This action is subject to *sua sponte* screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(a).

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."  *Id.* at 327.   "A complaint is malicious when it 'duplicates allegations of another [ ]federal lawsuit by the same plaintiff.'"  *Daley v. United States Dist. Court*, 629 F. Supp. 2d 357, 359-360 (D. Del. 2009) (alteration in original) (quoting *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993)); *see also Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (stating "malicious" in the context of sections 1915(e) and 1915A(b) "is more usefully construed as intended to harass").

Whether a complaint fails to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1) is governed by the same standard as Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).   Accordingly, a court must determine whether the complaint includes "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotation marks omitted).[14]

---

[14]     Procedurally, the PLRA contains an administrative exhaustion requirement: "No action shall be brought with respect to prison conditions under  . . . 42 U.S.C. [§] 1983[], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (alterations added).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Jones v. Bock*, 549 U.S. 199, 218 (2007) ("Compliance with prison grievance procedures [] is all that is required by the PLRA to 'properly exhaust'").

The Supreme Court has held, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones*, 549 U.S. at 216.  Nevertheless, a complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint.  *Rowann v. Coleman*, 481 F. App'x 44, 46 n.3 (3d Cir. 2012).  In this case, the Court is unable to determine whether plaintiff exhausted his administrative remedies.  *Cf. Ingram v. Ritcher*, 2013 U.S. Dist. LEXIS 61384, at *7-8 (D.N.J. Apr. 30, 2013) (noting plaintiff's failure to exhaust was "clear from the face

*Martinez v. Francois et al.*
Civil No. 13-102
Page 9

## A.    Personal Jurisdiction

At the outset, the Court finds it lacks personal jurisdiction over Randall Mathena, Warden of Red Onion State Prison.  In determining whether this Court may exercise personal jurisdiction over an out-of-state defendant, the Court engages in a two-part inquiry.  *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010); *Godfrey v. Int'l Moving Consultants, Inc.*, 18 V.I. 60, 66 (D.V.I. 1980).  First, the Court considers whether a statutory basis for jurisdiction exists under the forum state's long-arm statute.[15]  *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.").  Second, the Court considers whether the defendant has minimum contacts with the forum state that are sufficient to satisfy constitutional due process requirements.[16]  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

---

of the complaint" where plaintiff responded in the negative to the question on the form complaint asking whether he had exhausted his administrative remedies).

[15]    The Virgin Islands long-arm statute provides, in pertinent part, that

(a)    A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1)    transacting any business in this territory;
(2)    contracting to supply services or things in this territory;
(3)    causing tortious injury by an act or omission in this territory;
(4)    causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory[.]

5 V.I.C. § 4903(a).

[16]    The due process clause requires that a defendant have "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden*, 134 S. Ct. at 1121(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Two types of minimum contacts exist: those that create general personal jurisdiction and those that create specific personal jurisdiction.  General personal jurisdiction requires "continuous and systematic" contacts with the forum state such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred.  *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 416 (1984); *accord Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the

*Martinez v. Francois et al.*
Civil No. 13-102
Page 10

Here, assuming *arguendo* that the long-arm statute permits the exercise of personal jurisdiction over Mathena, petitioner has not alleged the minimum contacts necessary to support a finding of specific personal jurisdiction consistent with due process.[17]  *See Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 202 (3d Cir. 1998) ("We cannot presume that jurisdiction is proper simply because the requirements of a long-arm statute have been met.").

The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S.Ct. at 1121 (describing the specific jurisdiction analysis as a "defendant-focused 'minimum contacts' inquiry").  Generally, this inquiry requires consideration of the following factors in evaluating whether a defendant is subject to specific personal jurisdiction: (1) whether the defendant "purposefully directed its activities at the forum;" (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) if the first two requirements are met, whether the exercise of jurisdiction otherwise "comports with traditional notions of fair play and substantial justice."[18] *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (alterations and citation omitted).[19]

---

defendant to defend itself in that state.  *See Helicopteros Nacionales*, 466 U.S. at 414-15; *accord Walden*, 134 S.Ct. at 1121.

[17]     Here, petitioner does not allege any facts suggesting that Mathena is subject to general personal jurisdiction in the Virgin Islands.  Accordingly, the Court limits its due process analysis to specific jurisdiction.

[18]     Courts consider the following in evaluating the third factor: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotation marks omitted).

[19]     Where the alleged injury is the result of an intentional tort, the specific jurisdiction analysis turns on alternative factors.  *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (identifying a three-factor test known as the "effects test").  While "claims brought pursuant to § 1983 sound in tort," here, plaintiff **has not** alleged an intentional act by Mathena.  *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 709 (1999); *see Heck v.*

Here, Mathena's contacts with the Virgin Islands do not satisfy the "defendant-focused" minimum contacts requirement.  *See Walden*, 134 S. Ct. at 1122.  Petitioner alleges that Mathena had contact with the Virgin Islands by "authoriz[ing] . . . the acceptance" of petitioner at Red Onion and "the attendant contractual payment from the Virgin Islands."   Am. Pet. ¶ 63.  Transfers of state prisoners to prisons in other states are generally effected pursuant to intergovernmental agreements, which permit states to contract for one state's incarceration of another state's convicts in consideration for payment.[20]  In light of petitioner's allegation of a "contractual payment," the Court assumes some type of contractual relationship exists between the Virgin Islands and Virginia regarding petitioner's confinement.[21]

The existence of such a contract, however, is not enough, on its own, to establish the requisite minimum contacts between Mathena and the Virgin Islands.  *Trujillo*, 465 F.3d at 1219 n.10.  As the Supreme Court recently reiterated, the requisite connection arises only "out of contacts that the *defendant himself* creates with the forum State."  *Id*. at 1122 (emphasis in original; quotation marks omitted).   There are no allegations suggesting that Mathena "purposefully directed" activities toward this forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see e.g., Trujillo*, 465 F.3d at 1218 n.9, 1220-21 (10th Cir. 2006) (affirming a New Mexico district court's dismissal of prisoner's claims against Virginia correction officials in

---

*Humphrey*, 512 U.S. 477, 483 (1994) (observing "'we have repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability").

[20]      *See* 4 U.S.C. § 112(a) & (b) (providing for intergovernmental "agreements or compacts" between states in furtherance of law enforcement activities and defining the term "states" to include the Virgin Islands).

[21]      *See* Va. Code Ann. § 53.1-216 (Virginia's Interstate Corrections Compact); 5 V.I.C. § 4503(c) (authorizing the Director of the Virgin Islands Bureau of Corrections to enter into agreements to use the correctional facilities of any state).

their official capacities for lack of personal jurisdiction pursuant to § 1915(e)(2)).[22]   Indeed, it appears highly unlikely that petitioner could allege facts sufficient to support such a conclusion.

In short, there are no allegations of any acts or contacts Mathena has with the Virgin Islands such that he would reasonably expect to be "haled into court [in the Virgin Islands]." *World-Wide Volkswagen Corp.*, 444 U.S. at 297.   Therefore, the Court finds that it would violate due process to assert personal jurisdiction over Mathena.     Accordingly, the Court RECOMMENDS that the action against Mathena be DISMISSED.

## B.     42 U.S.C. § 1983[23]

Section 1983 is not a source of substantive rights.[24]   Instead, it provides a remedy to redress violations of federal law grounded in federal constitutional provisions or statutes.  *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *accord Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (footnote omitted).  Section 1983 provides in relevant part:

---

[22]     *Cf. Landrith v. Schmidt*, 2012 U.S. Dist. LEXIS 157466 (D. Kan. Nov. 2, 2012) (declining to exercise jurisdiction over Oklahoma government officials in their official capacities where defendants had no minimum contacts with Kansas); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008) (affirming a Texas district court's holding that it lacked personal jurisdiction over an Arizona government official in her official capacity due to, *inter alia*, a lack of minimal contacts).

[23]     In *Bivens*, the Supreme Court established a direct cause of action under the Constitution of the United States against **federal officials** for the violation of federal constitutional rights.   Here, Francois and Wilson are **territorial officials**.   Accordingly, the Court treats the civil action against Keith Francois and Julius Wilson as a § 1983 claim and not as a *Bivens* action.  *See West v. Shultz*, 2014 U.S. Dist. LEXIS 57960, *31, n.10 (M.D. Pa. Apr. 24, 2014) ("It has been held that the principles and analysis applicable to § 1983 actions are equally applicable to *Bivens*-type actions.") (citing *Schrob v. Catterson*, 948 F.2d 1401, 1408-09 (3d Cir. 1991) (stating "courts have generally relied upon the principles developed in the case law applying § 1983 to establish the outer perimeters of a *Bivens* claim against federal officials")).   The Court is perplexed by petitioner's assertion that *Bivens* applies in this instance.

[24]     A claim brought pursuant to 42 U.S.C. § 1983 is subject to the same statute of limitations as a personal injury claim in the state where the claim arose.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Cito v. Bridgewater Township Police Dep't*, 892 F .2d 23, 25 (3d Cir. 1989).   Petitioner's claims against the respondents arose in the Virgin Islands; thus, the applicable statute of limitations is the Virgin Islands' statute of limitations for personal injury actions, which is two years.  5 V.I.C. § 31(5)(A).  The statute of limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).   Petitioner states his alleged unconstitutional transfer occurred in March 2013; accordingly, petitioner's § 1983 action, filed May 1, 2014, is timely.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 49-50 (1988); *accord Kaucher*, 455 F.3d at 423. Here, petitioner asserts a due process claim arising out of his transfer.[25]

1.   Alleged Constitutional Violation – Fourteenth Amendment Due Process Claim

To state a claim for deprivation of procedural due process,[26] a petitioner must allege that (1) "the state deprived him of a protected interest in life, liberty, or property," and (2) "the deprivation occurred without due process of law." *Bond v. Horne*, 553 Fed. Appx. 219 (3d Cir. 2014). Thus, the threshold inquiry with respect to petitioner's due process claim is whether he had a liberty interest in avoiding transfer to a supermax facility. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (explaining that "the question of what process is due" is only reached if a "constitutionally protected liberty interest" is established).

A protected liberty interest may arise from one of two sources: "the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *accord Asquith v.*

---

[25]   Petitioner brings his due process claim under the Fifth Amendment to the United States Constitution, which applies to violations of constitutional rights by a federal government actor. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). All the respondents named herein are state government actors; thus, the Fifth Amendment is inapplicable. Accordingly, the Court considers petitioner's procedural due process claim within the purview of the Fourteenth Amendment. *See Kelo v. City of New London*, 545 U.S. 469, 496 (2005) (explaining the procedural due process safeguards of the Fifth Amendment are made applicable to the states by the Fourteenth Amendment).

[26]   Petitioner's complaint is void of any allegations supporting a substantive due process claim.

*Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999). The Constitution itself does not create a liberty interest in avoiding transfer to more restrictive conditions of confinement, such as a transfer from the general population to a supermax facility. *Wilkinson*, 545 U.S. at 221. In the prison context, whether the state has created such a liberty interest is determined by focusing on the nature of the deprivation under the analysis set forth in *Sandin v. Conner*, 515 U.S. 472, (1995). *See Wilkinson*, 545 U.S. at 222 ("[A] liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin* [.]"). In particular, state-created liberty interests are "limited to those situations where deprivation of that interest imposes 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 484).

There is no single standard for determining whether the challenged hardship is "atypical and significant." "The test apparently requires a determination of what constitutes the ordinary incidents of prison life" – referred to as the "baseline" – "so as to determine whether a particular deprivation can be said to be atypical and [a] significant departure therefrom." *Nifas v. Beard*, 2009 U.S. Dist. LEXIS 93235, at *41-42 (W.D. Pa. Sept. 30, 2009) (footnotes omitted; alteration added) (quoting *Wilkinson*, 545 U.S. at 223); *see Skinner v. Cunningham*, 430 F.3d 483, 486 (1st Cir. 2005) ("The hardship test has itself become the source of major disagreement."). The Supreme Court has not weighed in on the matter.[27] The Third Circuit has explained this baseline is "ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law," *Griffin*, 112 F.3d at 706, which as one

---

[27]    *See Wilkinson*, 545 U.S. at 223 (observing the inconsistent "conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system" among the courts of appeals and declining to resolve the issue).

court aptly observed, "provides little practical guidance." *Nifas*, 2009 U.S. Dist. LEXIS 93235, at *43.

That said, it is undisputed that the required hardship analysis is a fact-specific inquiry. And, while courts disagree as to whether "ordinary incidents of prison life" refers to the general population, the specific population from which the prisoner was drawn or some other population, a court must at least examine an inmate's conditions of confinement.  For example, in *Wilkinson*, the Supreme Court held that initial placement in Ohio's supermax prison implicated a protected liberty interest.  In reaching this conclusion, the *Wilkinson* court explained that certain conditions in that facility – including (1) prohibition of almost all human contact, "even to the point that conversation is not permitted from cell to cell"; (2) limitation of exercise to only one hour per day and only in a small indoor room; (3) the presence of light 24 hours a day – "likely would apply to most solitary confinement facilities," suggesting these conditions did not impose an atypical and significant hardship.  *Wilkinson*, 545 U.S. at 224.  The Supreme Court explained further, however, that placement in the facility at issue there was for an indefinite duration and disqualified an otherwise eligible inmate for parole eligibility.  *Id*.  Viewing these conditions in totality, the Supreme Court found "they impose an atypical and significant hardship within the correctional context" under "any plausible baseline" and thus gave rise to a "liberty interest in avoiding assignment" to the supermax facility.  *Id*. at 223-24.

The liberty interest recognized in *Wilkinson* is derived from the drastic change in the conditions of confinement.  Here, petitioner provides no allegations regarding his Golden Grove conditions of confinement aside from the allegation that prison authorities allowed him to assist

in the restoration and repair of a government building.  Am. Pet. ¶ 18.[28]  As for his present

conditions, petitioner simply relies on Red Onion's classification as a supermax facility.  While

confinement at a supermax facility does not *per se* invoke constitutional protection,[29] petitioner's

allegation of work outside of confinement suggests a transfer from general-population conditions

to highly restrictive conditions.  Accordingly, petitioner has sufficiently alleged facts that his

transfer may have implicated a liberty interest.  And, since petitioner alleges his transfer occurred

without any process whatsoever, the Court finds petitioner's allegations raise a plausible

inference that he suffered a Fourteenth Amendment due process deprivation as a result of the

transfer.

2.  <u>Liability of Defendants</u>

Having satisfied the requirement of alleging a violation of a right secured by the

Constitution, petitioner must also be found to have alleged that the violation was committed or

caused by a person acting under color of state law.  *See, West*, 487 U.S. at 49-50.

(a)     *Territory of the Virgin Islands*

It is well established that the Government of the Virgin Islands and its instrumentalities

do not fall within § 1983's meaning of a "person."  *Ngiraingas v. Sanchez*, 495 U.S. 182, 192

(1990) ("Congress did not intend to encompass a Territory among those "persons" who could be

exposed to § 1983 liability.");  *accord Brow v. Farrelly*, 994 F.2d 1027, 1037 (3d Cir. 1993).

Thus, the Territory of the Virgin Islands is not subject to liability under § 1983 as matter of law.

---

[28]     The reference here is to the second of the two paragraphs denoted "18."

[29]     *See Lagerstrom v. Kingston*, 463 F.3d 621, 623 (7th Cir. 2006) (explaining a liberty interest "might not be present if" an inmate transferred to a high security facility "was already confined to segregation").

(b)    *Official Capacity Claims against Francois & Wilson*

While a plaintiff aggrieved at some governmental action may not name the Virgin Islands as a defendant in a § 1983 case, it is proper, to a limited extent, to name a territorial officer in his official capacity.   In particular, a plaintiff may sue an officer in his official capacity for **prospective relief only** from unconstitutional state policies, customs, or practices.[30]   *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011); *Lockhart v. Matthew*, 203 F. Supp. 2d 403, 415 (D.V.I. 2002).   To state a claim warranting such relief, a plaintiff must allege that the territorial official took some action pursuant to a policy, custom or practice of the territorial agency that resulted in the deprivation of the plaintiff's constitutionally-protected rights.  *See Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991).

Here, petitioner alleges that territorial officials engage in a practice of relocating Virgin Island prisoners to Red Onion without due process of law that is "so permanent and well settled as to qualify as a 'custom or usage' with the force of law" and that Francois and Wilson acted pursuant to this allegedly unconstitutional practice in transferring petitioner to Red Onion.  Am. Pet. ¶¶ 84-85.  As explained *supra*, petitioner has alleged sufficient facts to plead a due process violation.   Thus, the Court finds petitioner's allegations against Francois and Wilson are sufficient to state a cognizable constitutional claim against them in their official capacities.

(c)    *Individual Capacity Claims against Francois & Wilson*

"[S]tate officials sued in their individual capacities are 'persons' for purposes of § 1983." *See Hafer*, 502 U.S. at 23.  To state a claim against a defendant in his individual capacity under §

---

[30]    In official-capacity suits, money damages, punitive damages and retrospective relief are not available.  *See Ky. v. Graham*, 473 U.S. 159 (1985); *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Brow*, 994 F.2d at 1037 & n.12.

1983, a plaintiff must allege that the defendant was personally involved in the events or occurrences on which plaintiff's claims are based. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining "liability cannot be predicated solely on the operation of respondeat superior"). Personal involvement can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. *Id*. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. *Id*. The Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible. *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980). Here, petitioner alleges that in March 2013, both Francois and Wilson authorized petitioner's transfer to a supermax facility without the requisite due process.

In sum, the Court RECOMMENDS petitioner's § 1983 claims against the Territory of the Virgin Islands be DISMISSED and his § 1983 claims against Francois and Wilson be ALLOWED.

## V.    PROCEEDING IN FORMA PAUPERIS

Petitioner seeks to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915. The Prison Litigation Reform Act ("PLRA") establishes certain requirements for prisoners attempting to bring a civil action IFP.[31] *See* 28 U.S.C. § 1915(a)(2). Specifically, a prisoner must submit (1) an affidavit which states the prisoner is unable to pay the filing fee; and (2) a copy of his trust fund account statement for the six-month period immediately preceding the filing of the action

---

[31]    *See also* Application to Proceed Without Prepaying Fees or Costs (Form AO 240) ¶ 1 (informing petitioners to attach to the application "a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in [the petitioner's] name").

**certified by an authorized official.**[32]  28 U.S.C. § 1915(a)(1)-(2).  Petitioner's application is incomplete as he has not submitted the appropriately **certified** copy of his inmate trust account. Accordingly, petitioner's application to proceed *in forma pauperis* will be DENIED without prejudice.

## VI.    MOTION TO APPOINT COUNSEL

Petitioner seeks appointment of counsel pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.  The CJA provides in relevant part that whenever the court "determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28."  18 U.S.C. § 3006A(a)(2)(B).  In light of the Court's recommendation that petitioner's habeas petition be summarily dismissed, the Court RECOMMENDS petitioner's motion be DENIED.

## VII.    CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED as follows:

(1)    Petitioner's combined civil rights action and petition for habeas corpus relief  [DE 25] pursuant to 28 U.S.C. § 2241 be DISMISSED;

(2)    Petitioner's Motion for Default Judgment or in the Alternative Motion to Compel the Filing of a Responsive Pleading [DE 12] be DENIED;

(3)    Petitioner's Motion to Appoint Pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A [DE 3] be DENIED;

---

[32]      Under the PLRA, all prisoners who file IFP **civil actions** must pay the full amount of the filing fee.  28 U.S.C. § 1915(b)(1).  For prisoners unable to pay the filing fee at the time of filing, however, the statute provides for the assessment and, "when funds exist," the collection of an initial fee equal to 20 percent of the greater of the prisoner's average monthly account balance or monthly deposits "for the 6-month period immediately preceding the filing of the complaint."  *Id*. § 1915(b)(1)(A)-(B).  After payment of the initial fee, the prisoner must "make monthly payments equal to 20 percent of the preceding month's income credited to the [] account" to be forwarded when the prisoner's account balance exceeds ten dollars.  28 U.S.C. § 1915(b)(2).

*Martinez v. Francois et al.*
Civil No. 13-102
Page 20

(4)    Petitioner be directed to file as a new action a civil rights complaint pursuant to 42 U.S.C. § 1983 against Julius Wilson and Keith Francois consistent with this Report and Recommendation;

(5)    Petitioner's Application to proceed *in forma pauperis* [DE 2] under 28 U.S.C. § 1915(a)(1) be DENIED WITHOUT PREJUDICE and petitioner be directed to file an amended application consistent with this Report and Recommendation in the new civil rights action; and

(6)    The Clerk of Court be directed to close this case.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

**Dated**: July 3, 2014                              S_____

**RUTH MILLER**
United States Magistrate Judge