# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

—————————————————————————
)
**JOHNNY MARTINEZ,**                                )
)
          **Petitioner,**                       )
)
       **v.**                                        )     **Civil Action No. 2013-00102**
)
**KEITH FRANCOIS, Warden of the Golden**            )
**Grove Correctional Facility; JULIUS WILSON,**     )
**Director of the Virgin Islands Bureau of**        )
**Corrections; TERRITORY OF THE VIRGIN**            )
**ISLANDS; and RANDALL MATHENA,**                   )
**Warden of the Red Onion State Prison,**           )
)
         **Respondents.**                    )
—————————————————————————)

**Attorneys:**
**Joseph A. DiRuzzo, III, Esq.,**
Miami, FL
    *For the Petitioner*

**Tiffany V. Monrose, Esq.,**
**Kimberly L. Salisbury, Esq.,**
St. Thomas, U.S.V.I.
    *For the Respondents*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the Report and Recommendation of Magistrate Judge Ruth Miller (Dkt. No. 28) regarding the "First Amended Petition & Complaint" filed by Petitioner Johnny Martinez, encompassing requests for a writ of habeas corpus and relief for alleged civil rights violations. (Dkt. No. 25). Included within the Magistrate Judge's Report and Recommendation is consideration of several other motions filed by Martinez which are associated with the First Amended Petition & Complaint: a "Motion for Leave to Proceed *in*

*Forma Pauperis* (Dkt. No. 2); a "Motion to Appoint Pursuant to the Criminal Justice Act" (Dkt. No. 3); and a "Motion for an Entry of Default Judgment *or in the Alternative* Motion to Compel the Filing of a Responsive Pleading" (Dkt. No. 12). Also filed by Martinez and associated with the First Amended Petition & Complaint are a "Motion to Expedite Preliminary Review" (Dkt. No. 19) and a "Motion for Preliminary Injunction" (Dkt. No. 26). The Territory of the Virgin Islands (the "Government") responded with a Motion to Dismiss the First Amended Petition & Complaint. (Dkt. No. 27).

In addition to filing objections to the Magistrate Judge's Report and Recommendation (Dkt. No. 33), Martinez also filed a "Motion for Leave to Amend" his First Amended Petition & Complaint (Dkt. No. 35); a "Motion for Leave to Conduct Jurisdictional Discovery" (Dkt. No. 36); and a "Motion to Expedite Discovery" (Dkt. No. 38). The Court will adjudicate these motions in the context of this Memorandum Opinion as well.

For the following reasons, the Court will dismiss Martinez's First Amended Petition & Complaint and deny the motions associated with that pleading. The Court will also deny Martinez's "Motion for Leave to Amend" and the motions associated with the proposed Second Amended Petition & Complaint.

## I.   BACKGROUND

Petitioner Johnny Martinez is a state prisoner currently serving a thirty-five year sentence for second degree murder in violation of 14 V.I.C. § 923(b). (Dkt. No. 25 at ¶¶ 15-16). From the late 1990s to March 2013, Martinez was incarcerated at the Golden Grove Correctional Facility ("Golden Grove") in St. Croix, Virgin Islands. (*Id.* at ¶ 17). According to the First Amended Petition & Complaint, during this time he had no material instances of rule infractions and was a

"model inmate" such that he was selected to participate in a building restoration project outside of Golden Grove. (*Id.* at ¶ 18; Exh. 1-6).[1]

In March 2013, Martinez was transferred to Red Onion State Prison ("Red Onion"), a super-maximum security ("supermax") facility located in Virginia. (*Id.* at ¶¶ 17, 29). Martinez claims that he was transferred without a hearing to contest his relocation or notice of any classification change warranting the transfer. (*Id.* at ¶¶ 29-30, 33-34). He asserts that his relocation to Red Onion violated his due process rights guaranteed by the United States Constitution. (*Id.* at ¶ 31).

Martinez initiated this matter on November 1, 2013, with a "Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241" against Keith Francois, then Warden of Golden Grove; Julius Wilson, then Director of the Virgin Islands Bureau of Corrections ("BOC"); the Government; and Randall Mathena, Warden of Red Onion. (Dkt. No. 1). Martinez subsequently filed a First Amended Petition & Complaint ("Petition & Complaint") seeking (1) a writ of habeas corpus under § 2241 and (2) monetary and injunctive relief for alleged civil rights violations pursuant to 42 U.S.C. § 1983 and under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Dkt. No. 25).

At the time of filing his initial petition, Martinez also filed a "Motion to Proceed *in Forma Pauperis*" (Dkt. No. 2), which he has since withdrawn (Dkt. No. 29),[2] and a "Motion to Appoint Pursuant to the Criminal Justice Act" (Dkt. No. 3). On January 10, 2014, Martinez filed a "Motion for an Entry of Default Judgment *or in the Alternative* Motion to Compel the Filing of

---

[1] Martinez's First Amended Petition & Complaint includes two paragraphs denoted "18." The reference here is to the first of those two paragraphs.

[2] The Court accepts Martinez's "Notice re: Retracting Motion to Proceed *IFP*" (Dkt. No. 29) and, accordingly, will deny as moot his "Motion to Proceed *in Forma Pauperis*" (Dkt. No. 2).

a Responsive Pleading." (Dkt. No. 12). Martinez then filed a "Motion to Expedite Preliminary Review" of his habeas petition. (Dkt. No. 19).[3]

On May 1, 2014, the Court referred Martinez's pleading and the motions described above to Magistrate Judge Ruth Miller for a Report and Recommendation ("Report"). (Dkt. No. 24).[4] On July 3, 2014, Magistrate Judge Miller issued a Report recommending that: (1) Martinez's Petition & Complaint (Dkt. No. 25) be dismissed; (2) the "Motion for Default Judgment *or in the Alternative* Motion to Compel the Filing of a Responsive Pleading" (Dkt. No. 12) be denied; (3) the "Motion to Appoint Pursuant to the Criminal Justice Act," 18 U.S.C. § 3006A (Dkt. No. 3) be denied; (4) Martinez be directed to file, as a new action, a civil rights complaint pursuant to 42 U.S.C. § 1983 against Wilson and Francois only; (5) the Application to proceed *in forma pauperis* (Dkt. No. 2) be denied without prejudice; and (6) the Clerk of Court be directed to close the instant case. (Dkt. No. 28 at 19-20).

In response to the Report, Martinez has filed: timely objections (Dkt. No. 33); a "Motion for Leave to Amend" his Petition & Complaint along with a proposed "Second Amended Petition & Complaint" (Dkt. No. 35; Exh. 2); a "Motion for Leave to Conduct Jurisdictional Discovery" (Dkt. No. 36); and a "Motion to Expedite Discovery" (Dkt. No. 38).

---

[3] The Court will deny as moot Martinez's "Motion to Expedite Preliminary Review" (Dkt. No. 19).

[4] Subsequent to the Court's referral of this matter to Magistrate Judge Miller, Martinez filed a "Motion for Preliminary Injunction." (Dkt. No. 26). In opposition, the Government filed a "Reply to Motion for Preliminary Injunction and Motion to Dismiss." (Dkt. No. 27). Martinez has filed both a "Response to the Territorial Respondents' Motion to Dismiss" (Dkt. No. 30) and a "Reply to Respondents' Response to Martinez's Motion for Preliminary Injunction" (Dkt. No. 31).

In this Memorandum Opinion and accompanying Order, the Court will address all of the pleadings and motions filed by Martinez—both those referred to the Magistrate Judge as well as those filed subsequent to the referral.[5] As discussed below, the Court will dismiss the pleadings and deny the motions.

## II.   DISCUSSION

In deciding whether to accept, reject, or modify a Report and Recommendation, the Court is required to make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. 28 U.S.C. § 636(b)(1). Martinez has filed objections to the majority of Magistrate Judge Miller's Report. (Dkt. No. 33). The Court has conducted a *de novo* review of Martinez's Petition & Complaint and the motions examined by the Report, and considered the objections lodged by Martinez. For the following reasons, the Court will adopt, in part, the Report as discussed in its analysis herein.

## A.   Habeas Petition Pursuant to 28 U.S.C. § 2241 (Count 1)

### 1.   Applicable Legal Standards

"Habeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994). Habeas Rule 4, which applies to § 2241 petitions pursuant to Rule 1(b), requires the Court to *sua sponte* screen and dismiss a habeas petition without ordering a responsive pleading from the State when "it plainly appears from the petition and any attached

---

[5] In accordance with its obligations described below, the Court will screen both Martinez's request for a writ of habeas corpus and his civil rights action. The Court takes note of *Burnam v. Marberry*, 313 F. App'x 455 (3d Cir. 2009), in which the Third Circuit criticized a district court's action in allowing repeated amendments to a petition to include combined habeas and 42 U.S.C. § 1983 claims. *Id.* at 455 & n.2; *see id.* at 455 ("In spite of its characterization of Burnam's action as a bonafide § 2241 petition, the District Court allowed [petitioner] to twice amend the petition to include additional civil claims."). Here, in contrast to *Burnam*, the Court has not characterized Martinez's claim as sounding in habeas, nor has the Court allowed Martinez to combine his habeas and civil rights claims. Rather, in the interests of efficiency, the Court is examining the combined action filed by Martinez to address whether Martinez's due process violation claim sounds in habeas or can be brought as a civil rights action.

exhibits that the petitioner is not entitled to relief." 28 U.S.C. § 2254 Rule 4; *see McFarland*, 512 U.S. at 856 ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face.").[6]

Section 2241 confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. Section 2254 confers jurisdiction on district courts to issue "writ[s] of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court . . . on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254.

The general rule is that a prisoner is entitled to a writ of habeas corpus only if he "seek[s] to invalidate the *duration* of [his] confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis added); *see Leamer v. Fauver*, 288 F.3d 532, 542-43 (3d Cir. 2002) (stating that the "operative test" of whether a claim falls within the "core of habeas" is "whether a favorable determination of [petitioner's] challenge would *necessarily imply* that he would serve a shorter sentence"). Habeas relief is also available when an inmate challenges the "execution" of his or her sentence, rather than its validity. *See Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). In the Third Circuit, to sustain a challenge to the execution of a sentence, a petitioner must show that his treatment is inconsistent with a specific "command or recommendation in the sentencing

---

[6] The Court adopts the Report's recommendation that Martinez's "Motion for an Entry of Default Judgment *or in the Alternative* Motion to Compel the Filing of a Responsive Pleading" (Dkt. No. 12) be dismissed. (*See* Dkt. No. 28 at 7 n.13). Martinez did not object to this recommendation. As Magistrate Judge Miller correctly noted, a respondent to a habeas petition is not required to respond until after the court screens the petition and orders a response. *See* 28 U.S.C. § 2254 Rule 4.

judgment." *Cardona v. Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012) ("In order to challenge the execution of his sentence . . . , [petitioner] would need to allege that [the Bureau of Prison's] conduct was somehow inconsistent with a command or recommendation in the sentencing judgment.").

### 2.    Analysis

The Court finds that it lacks subject matter jurisdiction over Martinez's petition because it does not sound in habeas.[7] Here, Martinez is not challenging his conviction, the fact or duration of his confinement, or the execution of his sentence.[8] Rather, he is asserting that his transfer to a different location of incarceration violated due process protections. (*See* Dkt. No. 25 at ¶¶ 1, 31). This is a conventional claim under 42 U.S.C. § 1983, as Martinez is alleging a violation of his procedural due process rights by state and territorial actors during his

---

[7] Martinez has filed his habeas action under § 2241. (Dkt. No. 25 at ¶ 3). As a preliminary matter, the Court adopts the Report's finding that Martinez's reliance on § 2241 is misplaced. (Dkt. No. 28 at 6). A prisoner incarcerated pursuant to a state court judgment must proceed via a § 2254 petition, rather than a § 2241 petition, regardless of whether he challenges the duration, fact, or execution of his sentence:

> [A]lthough the texts of § 2241 and § 2254 appear similar in their grant of jurisdiction, § 2254 is the exclusive avenue for a state prisoner challenging the constitutionality of his detention. Section 2254 is properly understood as in effect implementing the general grant of habeas corpus authority found in § 2241, even if the petition is not challenging the underlying state court conviction . . . , so long as the person is *in custody pursuant to the judgment of a state court*.

*McKnight v. United States*, 27 F. Supp. 3d 575, 587 (D.N.J. June 25, 2014) (citation omitted); *see Washington v. Sobina*, 509 F.3d 613, 618 n.5 (3d Cir. 2007) ("We have held that a state prisoner challenging the validity or execution of his state court sentence must rely on the more specific provisions of § 2254 rather than § 2241.") (citing *Coady*, 251 F.3d at 485 (holding that where § 2254 applies, it is the exclusive remedy for state prisoners seeking relief in federal court for incarceration in violation of federal law)). In any event, as discussed below, the Court finds that the Petition does not sound in habeas.

[8] In his objections to the Report, Martinez concedes that his due process violation claim "does not implicate the 'core of habeas,' in that he is not seeking immediate release or a speedier release from that imprisonment." (Dkt. No. 33 at 7).

incarceration at Golden Grove. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [while] requests for relief turning on circumstances of confinement may be presented in a § 1983 action."); *Preiser v. Rodriquez*, 411 U.S. 475, 498-99 (1973) ("[T]he prisoners' claims related solely to the States' alleged unconstitutional treatment of them while in confinement. None sought . . . to challenge the very fact or duration of the confinement itself. . . . [A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."); *Leamer*, 288 F.3d at 542 (concluding that a § 1983 claim is appropriate "when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction").

Martinez claims that his petition is a challenge to the execution of his sentence because his "arbitrary transfer is clearly inconsistent with the sentencing court's recommendation for punishment." (Dkt. No. 33 at 3). This argument extends far beyond the limited scope defined by the Third Circuit for a challenge to the execution of a sentence. *See Gillette v. Territory of the Virgin Islands*, 563 F. App'x 191, 194 (3d Cir. 2014) (stating that the Third Circuit's approach to petitions regarding the execution of sentences is "not so broad" as other jurisdictions as to cover challenges to prison conditions without reference to a specific directive to prison officials in the sentencing judgment). For example, in *Cardona*, a prisoner brought a habeas petition arguing that the Bureau of Prisons illegally referred him to a Special Management Unit as punishment for filing numerous lawsuits. 681 F.3d at 533. The Third Circuit concluded that the petition, lacking a reference to a specific requirement or condition of the sentencing judgment, "simply does not concern how [the Bureau of Prisons] is 'carrying out' or 'putting into effect' his sentence, as

8

directed in his sentencing judgment." *Id.* at 537 (quoting *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005)). The same is true here. Martinez has failed to identify a command or recommendation in his sentencing judgment that specifies where or at what level of security he must be incarcerated, and therefore his action does not fall within the scope of a habeas petition.[9]

Accordingly, the Court will dismiss Count 1 of the Petition & Complaint against all Respondents for lack of subject matter jurisdiction. *See Gillette*, 563 F. App'x at 194-95 (affirming dismissal of § 2241 petition for lack of subject matter jurisdiction where petitioner failed to identify any "command or recommendation in the sentencing judgment" directing prison officials to provide specific health care); *Cardona*, 681 F.3d at 537; *Bronson v. Demming*, 56 F. App'x 551, 553-43 (3d Cir. 2002) (finding habeas relief is unavailable to inmate seeking release from disciplinary segregation to general population, and holding that district court properly dismissed habeas petition).[10]

---

[9] Martinez also argues that his petition sounds in habeas as a "hybrid" action because he "challenges the execution of his sentence [in being transferred by the Virgin Islands] as it affects the fact or duration of his sentence" as it is served in Virginia. (*See* Dkt. No. 33 at 4) (quoting *Montez v. McKinna*, 208 F.3d 862, 864-65 (10th Cir. 2000)). The Court is not persuaded. Even assuming that *Montez* can be interpreted as Martinez suggests, the Third Circuit's consideration of challenges to conditions or circumstances of incarceration via habeas petitions is narrower than other circuits, and requires a link to a specific command in the petitioner's sentencing judgment. *See Gillette*, 563 F. App'x at 194. Because there is no specific corresponding directive in Martinez's sentencing judgment, a challenge to his transfer from the Virgin Islands to Virginia cannot be pursued by means of a habeas petition.

[10] The Court therefore agrees with the Report's finding that Martinez may not proceed through a habeas petition because his due process violation claim does not sound in habeas. (*See* Dkt. No. 28 at 4-5). Because the Court will dismiss Martinez's habeas petition, it will deny as moot the "Motion to Appoint Pursuant to the Criminal Justice Act" (Dkt. No. 3), and thus adopts the Report's recommendation of the same (*see* Dkt. No. 28 at 19). For the same reasons, the Court need not reach the issue of the proper respondent to Martinez's petition, and, accordingly, the Court will not address Martinez's objections to the Report's recommendation on this issue.

**B.      Civil Rights Claims (Counts 2, 3, 4)**

In his Petition & Complaint, Martinez alleges three counts of the deprivation of a liberty interest without the requisite due process. In Count 2, he asserts a cause of action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Francois and Wilson in their individual capacities for the alleged violation of his Fifth Amendment due process guarantees. (Dkt. No. 25 at ¶¶ 45-59). In Count 3, he brings an action under 42 U.S.C. § 1983 against Mathena in his official capacity for the alleged violation of his Fifth Amendment due process rights. (*Id.* at ¶¶ 60-68). Count 4 asserts a *Bivens* action for alleged Fifth Amendment due process violations against the Government and Wilson and Francois in their official capacities. (*Id.* at ¶¶ 69-88). In all three counts, Martinez seeks injunctive relief and compensatory and punitive damages. (*Id.* at 8, 11, 14). For the following reasons, the Court finds that all three counts must be dismissed.

**1.      Applicable Legal Standards**

The Prison Litigation Reform Act ("PLRA") requires the Court to review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). A court must "identify cognizable claims" and "dismiss the complaint, or any portion of the complaint" that is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who

---

Martinez has also raised constitutional challenges to the Report's conclusion that he must file separate pleadings for his habeas petition and civil rights action. (Dkt. No. 33 at 2) ("[I]f this Court were to require the Petitioner to file two separate cases involving the same operate [sic] facts[,] . . . [this would have] clear equal protection and due process implications."). The Court declines to reach the constitutional issues because it concludes that Martinez's claim cannot be brought in a habeas petition. *See United States v. Cornish*, 103 F.3d 302, 306 n.4 (3d Cir. 1997) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.") (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)).

is immune from such relief." *Id.* § 1915A(b)(1)-(2). A complaint is frivolous when it "lacks an arguable basis either in law or fact." *Shelton v. Baker*, 588 F. App'x 102, 103 (3d Cir. 2015) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327. A complaint is malicious when made to retaliate against or harass the defendants. *See Concepcion v. Resnick*, 143 F. App'x 422, 426 (3d Cir. 2005).

Whether a complaint fails to state a claim pursuant to § 1915A(b)(1) is governed by the same standard as Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering whether dismissal is appropriate, a court must: (1) take note of the elements a plaintiff must plead to state a claim; (2) set aside "unsupported conclusions and unwarranted inferences" and "legal conclusion[s] couched as factual allegation[s]"; and, (3) where there are "well-pleaded factual allegations, . . . assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation omitted); *see Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

To state a *Bivens* claim, a plaintiff must allege the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of federal law; and (2) that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Brown v. Chertoff*, 2009 WL 530550, at *4 (D.V.I. Feb. 27, 2009); *see Schreane*, 506 F. App'x at 123. A civil rights action brought under § 1983

requires the same two elements, but with the defendant acting under color of state or territorial law. *See* 42 U.S.C. § 1983 (providing a cause of action for the deprivation of constitutional rights against any "person" acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia"); *Lepre v. Lukus*, -- F. App'x --, 2015 WL 525663, at *3 (3d Cir. Feb. 10, 2015) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993)).

### 2.   Martinez's Claims

#### a.   *Bivens* Cause of Action

Martinez cannot assert an action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), because no Respondents in this matter are federal actors. In Counts 2 and 4 of his Petition & Complaint, Martinez brings *Bivens* actions against Francois, the then Warden of Golden Grove, a territorial facility; Wilson, the then Director of the Virgin Islands BOC; and the Government. (*See* Dkt. No. 25 at ¶¶ 45-59, 69-88). As these are territorial, not federal, actors, Martinez cannot satisfy one of the "essential elements" of his *Bivens* claims and, therefore, has failed to state a claim upon which relief can be granted in Counts 2 and 4. *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001) (upholding dismissal for failure to state a *Bivens* claim where plaintiff failed to establish that defendants were federal actors).

Section 1983 explicitly covers territorial actors, and courts have held that in light of the availability of a § 1983 cause of action, a *Bivens* action is inappropriate. *See* 42 U.S.C. § 1983 (providing a cause of action for the deprivation of constitutional rights against any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State *or Territory* or the District of Columbia") (emphasis added); *Int'l Islamic Cmty. of Masjid Baytulkhaliq, Inc. v. United States*, 981 F. Supp. 352, 372 (D.V.I. 1997) (stating that "[s]ince a remedy already exists

under 42 U.S.C. § 1983 for plaintiffs making claims against officials acting under the authority of state or territorial law, a *Bivens* action is not appropriate against the territorial defendants," and granting summary judgment for territorial defendants to the extent that plaintiffs asserted a *Bivens* claim); *Eddy v. Virgin Islands Water & Power Auth.*, 961 F. Supp. 113, 116 (D.V.I. 1997) (citing with approval cases holding that "where plaintiffs have the remedy of 42 U.S.C. § 1983 available to them, implied causes of action under the *Bivens* doctrine are precluded" because "a plaintiff may only maintain a *Bivens* action if no other adequate remedy at law exists").

Martinez asks the Court to hold that Francois, Wilson, and the Government are federal actors, and allow him to proceed with a *Bivens* action rather than a § 1983 action, because "the ultimate responsibility of the unincorporated territories rests with Congress and the Federal Government." (Dkt. No. 33 at 13). The Court is unaware of any authority—and Martinez has cited to none—that stands for the proposition that, because Congress established the Government of the Virgin Islands through the Revised Organic Act of 1954, Virgin Islands governmental actors are federal actors for *Bivens* purposes.

Moreover, courts in this circuit have consistently treated territorial laws and actors as state, rather than federal, equivalents. *See, e.g.*, *Iles v. de Jongh*, 638 F.3d 169, 173 (3d Cir. 2011) (analyzing due process violation claim against, *inter alia*, the Virgin Islands Governor and Government under the Fourteenth Amendment); *St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the Virgin Islands*, 357 F.3d 297, 302 (3d Cir. 2004) (holding that the principles embodied in the Supremacy Clause apply "to the laws of the Virgin Islands" and that the National Labor Relations Act pre-empted a section of the Virgin Islands Wrongful Discharge Act); *Eddy*, 961 F. Supp. at 116 (declining to extend *Bivens* to territorial actors and reasoning that "*Bivens* allowed claims against *federal* officials, not state officials"); *Masjid*, 981 F. Supp. at

13

372; *Jackson v. West Indian Co.*, 944 F. Supp. 423, 428 (D.V.I. 1996) ("The Virgin Islands is more analogous to a state government than to an appendage of the federal government.").

Martinez also contends that the Court should create a quasi-*Bivens* action because "Section 1983 is unavailable against [Francois and Wilson] in their official capacity" and "Petitioner should not be left without a remedy." (Dkt. No. 33 at 14-15). As explained *infra*, Part C, a § 1983 action is an available form of relief against government officials in their official capacities for prospective injunctive relief, and a § 1983 action against them in their individual capacities is an available form of relief for monetary damages. Thus, a remedy at law exists, assuming that the applicable legal requirements are met. *See Eddy*, 961 F. Supp. at 116 (noting that the remedies available in a § 1983 action make it "as effective as a *Bivens* remedy") (citing *Ward v. Caulk*, 650 F.2d 1144, 1148 (9th Cir. 1981)).

In sum, the Court does not agree that Francois, Wilson, and the Government are federal actors; that they should be treated as federal actors; or that a quasi-*Bivens* action should be permitted. The Court will therefore dismiss Counts 2 and 4 of the Petition & Complaint for failure to state a claim.[11]

### b.    Fifth Amendment Claims

For the same reason—that all Respondents in this matter are state actors—dismissal is appropriate of Martinez's Fifth Amendment due process claims asserted in Counts 2, 3, and 4.

In Count 3, Martinez alleges a Fifth Amendment violation by Mathena, the Warden of a Virginia state prison. (Dkt. No. 25 at ¶¶ 60-68). However, it is a "fundamental principle of constitutional adjudication" that "[t]he limitations of the Fifth Amendment restrict only federal government action." *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983).

---

[11] Accordingly, the Court adopts the Report's finding that Martinez must proceed through a § 1983 action, and not a *Bivens* action. (*See* Dkt. No. 28 at 12 n.23).

Similarly, in Counts 2 and 4, Martinez asserts Fifth Amendment due process violations by the Government, Wilson, and Francois, who, as explained above, are territorial—akin to state—not federal, actors. (Dkt. No. 25 at ¶¶ 45-59, 69-88); *see Iles*, 638 F.3d at 173. As the Fifth Amendment is inapplicable to state and territorial actors, Martinez cannot satisfy one of the "essential elements" of his Fifth Amendment due process claims and, therefore, has failed to state a claim upon which relief can be granted. *See Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (affirming dismissal of claims brought under the Due Process Clause of the Fifth Amendment against state officials).[12] Accordingly, the Court will dismiss Counts 2, 3, and 4 for failure to state a claim.

## C.    Motion to Amend Complaint

In response to the Magistrate Judge's Report and Recommendation, Martinez has filed a "Motion for Leave to Amend" his Petition & Complaint (Dkt. No. 35). Martinez seeks to: (1) assert that Respondents violated due process protections provided by the Fourteenth Amendment in all counts; (2) identify Mathena as an agent for the Virginia Department of Corrections and add language alleging the factual basis for the Court to exercise personal jurisdiction over Mathena; (3) add allegations regarding the conditions at Golden Grove from which he was transferred; and (4) bring a § 1983 action, instead of a *Bivens* action, in Count 2 against Francois and Wilson in their individual capacities. (*See* Dkt. No. 35, Exh. 1, Second Amended Petition & Complaint showing additions and deletions).

---

[12] The Court adopts the Report's conclusion that Martinez's due process claim is within the purview of the Fourteenth, rather than the Fifth, Amendment. (*See* Dkt. No. 28 at 13 n.25). The Fourteenth Amendment Due Process Clause protects against state action. *See* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law."); 48 U.S.C. § 1561 (section of Revised Organic Act of the Virgin Islands which makes applicable to the Virgin Islands the second sentence of Section 1 of the Fourteenth Amendment); *Hendrickson v. Reg O Co.*, 657 F.2d 9, 13 n.2 (3d Cir. 1981).

To the extent that Martinez's Second Amended Petition & Complaint includes a habeas petition and Fifth Amendment claims pursuant to *Bivens*, the Court relies on its analysis above to conclude that these portions warrant dismissal. Regarding the remaining claims, the Court will construe Counts 2 through 4 to assert causes of action under § 1983, based on alleged Fourteenth Amendment procedural due process violations. Even with such favorable construction, however, the allegations in Martinez's proposed Second Amended Petition & Complaint do not render his Complaint viable as a matter of law. Accordingly, the Court will deny the Motion for Leave to Amend as futile.

### 1. Applicable Legal Standards

Generally, leave to amend pleadings pursuant to Federal Rule of Civil Procedure 15(a)(2) is to be freely given, with the decision to grant leave to amend resting within the discretion of the court. *See* Fed. R. Civ. P. 15(a)(2); *Cruz v. Matthews*, 2014 WL 562811, at *1 (D.V.I. Feb. 13, 2014) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman*, 371 U.S. at 182.

"In assessing futility, the district court applies the same standard of legal sufficiency as it applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (internal quotation and citation omitted). Thus, "[a]mendment of the complaint is futile . . . if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). Stated differently, the Court must assess whether the inclusion of new facts or allegations "would change the analysis underpinning [the] Court's dismissal." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).

Accordingly, the Court examines Martinez's Second Amended Petition & Complaint, considering its allegations as true and making all reasonable inferences in Martinez's favor, to determine whether it pleads facts sufficient to sustain a cause of action. *See Green v. Dep't of Corrections*, 393 F. App'x 20, 21-22 (3d Cir. 2010); *Paladino v. Newsom*, 2014 WL 70069, at *1 (D.N.J. Jan. 9, 2014).

As explained above, to state a civil rights cause of action under § 1983, a plaintiff must allege the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state or territorial law; and (2) that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Lepre*, 2015 WL 525663, at *3 (citing *Kost*, 1 F.3d at 184).

### 2. Analysis

#### a. Government and Government Official Liability

To the extent the Court construes Martinez's civil rights complaint as brought under § 1983 for a Fourteenth Amendment violation, there are several portions that warrant summary dismissal. First, it is well-established that the governments of territories are not considered "persons" for purposes of § 1983, and therefore, § 1983 claims for relief—other than claims for prospective injunctive relief—must fail as a matter of law. *See Ngiraingas v. Sanchez*, 495 U.S. 182, 192 (1990) (applying to Guam); *Brow v. Farrelly*, 994 F.2d 1027, 1037 (3d Cir. 1993) ("[D]ismissal of [plaintiff's] petition was ultimately appropriate, however, because neither the Territory of the Virgin Islands nor its officers acting in their official capacities are 'persons' under 42 U.S.C. § 1983.") (citing *Ngiraingas*, 495 U.S. at 192). Therefore, dismissal of Count 4 against the Government is proper for failure to state a claim under § 1983.

Further, the Third Circuit and this Court have repeatedly affirmed that claims for damages are "not actionable against territorial officials in their official capacities." *Iles*, 638 F.3d

17

at 178; *see, e.g.*, *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 241 (3d Cir. 2010); *Gautier v. Gov't of the Virgin Islands*, 2014 WL 4412336, at \*3-4 (D.V.I. Sept. 8, 2014). Because a § 1983 suit for money damages is not actionable against Wilson or Francois in their official capacities, Martinez cannot satisfy one of the "essential elements" of his § 1983 claim. *See Gautier*, 2014 WL 4412336, at \*3 (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995)). Accordingly, dismissal of Count 4 for failure to state a claim upon which relief may be granted is appropriate, insofar as it asserts § 1983 claims for monetary damages against Wilson and Francois in their official capacities.

Similarly, Martinez cannot seek monetary damages against Mathena because the Eleventh Amendment bars a § 1983 suit for monetary damages against state officials sued in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a suit against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and therefore "no different from a[n impermissible] suit against the State itself"); *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990). Thus, dismissal of Count 3 is proper, to the extent that it asserts claims for compensatory and punitive damages against Mathena in his official capacity. *See Stevenson v. Carroll*, 474 F. App'x 845, 848 (3d Cir. 2012) (pursuant to the Eleventh Amendment, state prison warden was immune from suit brought under § 1983 in his official capacity arising out of transfer of pretrial detainees from general prison population to secured housing unit).

### b.    Claim of Protected Liberty Interest

The following portions of Martinez's Second Amended Petition & Complaint, construed as a § 1983 action alleging a violation of Fourteenth Amendment procedural due process, remain for further analysis: (1) Count 2, against Wilson and Francois in their individual capacities for monetary and injunctive relief; (2) Count 3, against Mathena in his official capacity for

prospective injunctive relief; and (3) Count 4, against Wilson and Francois in their official capacities, and the Government, for prospective injunctive relief.[13] Because the Court finds, as a matter of law, that Martinez has failed to establish a Fourteenth Amendment liberty interest in his place of incarceration, it will dismiss these remaining counts against all Respondents.[14]

To successfully state a claim under § 1983 for the denial of procedural due process, a plaintiff must allege that he: (1) possessed an actual liberty interest; and (2) was deprived of that interest without being afforded sufficient process. *Everly v. Exec. Allegheny Cnty.*, 2015 WL 621767, at *2 (W.D. Pa. Feb. 12, 2015) (quoting *Barr v. Cnty. of Clarion*, 417 F. App'x 178, 180-81 (3d Cir. 2011)). Liberty interests "'may arise from two sources—the Due Process Clause itself and the laws of the States.'" *Fantone v. Latini*, -- F.3d --, 2015 WL 669290, at *4 (3d Cir. Feb. 18, 2015). However, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," and inmates generally have no due process liberty interest in how they are classified or where they are incarcerated. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."); *Ali v. Gibson*, 631 F.2d 1126, 1134-35 (3d Cir. 1980) (a prisoner has no liberty interest in remaining at a particular prison and the Constitution does not require a hearing prior to a transfer).

---

[13] The Court therefore adopts the Report to the extent that it limits Martinez's § 1983 procedural due process claim to these Respondents, in the specified capacities, for the specified remedies. (*See* Dkt. No. 28 at 16-18.)

[14] Since the Court reaches a different conclusion from the Report, the Court does not adopt the Report's finding that Martinez has sufficiently alleged facts that his transfer may have implicated a liberty interest, or the Report's recommendation that Martinez be directed to file a new § 1983 action. (*See* Dkt. No. 28 at 14-16, 20).

Prior to *Sandin v. Conner*, 515 U.S. 472 (1995), where the Due Process Clause itself did not confer a liberty interest in a particular prison situation, a federal court would "examin[e] . . . the possibility that the State had created a liberty interest by virtue of its prison regulations." *Id.* at 480. In *Sandin*, the Supreme Court directed that federal courts should instead analyze the nature of the deprivation to determine if a liberty interest is implicated. *Id.* at 484. Specifically, the *Sandin* Court held that an inmate's liberty interest is limited to freedom from only those conditions of confinement that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* Unless the challenged conditions meet this threshold, an examination of a state statute or regulation is not conducted. *See id.*; *accord Allah*, 229 F.3d at 223. The baseline of "ordinary incidents of prison life" is ascertained by "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997).[15]

The conditions in *Sandin* involved a 30-day assignment to segregated confinement. 515 U.S. at 485. The Supreme Court held that "[the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," inasmuch as "[t]he regime to which [the prisoner] was subjected . . . was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 486-87. In contrast, in *Wilkinson*, the Court held that prisoners had a protected liberty interest in avoiding one of Ohio's most extreme supermax facilities, where: conditions were "more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units"; prisoners were confined to

---

[15] Beyond this description, the Third Circuit has not defined "the baseline from which to measure what is 'atypical and significant' in any particular prison system." *See Fantone*, 2015 WL 669290, at *4.

their cells for 23 hours a day; and there was a "prohibition on almost all human contact." 545

U.S. at 214-15. Important to the Court's determination was that, once confined there, an inmate

remained indefinitely and was automatically disqualified from parole consideration, thereby

potentially lengthening an inmate's period of incarceration. *See id.* at 223-24. The combination

of these factors sufficed to create an atypical and significant hardship in relation to the ordinary

incidents of prison life. *Id.* The Court explained, however, that certain conditions of a supermax

prison would not, standing alone, suffice to create a liberty interest, including: (1) the presence of

light 24 hours a day; (2) a limitation of exercise to one hour per day in a small indoor room; and

(3) a severe limitation of human contact and conversation. *Id.* at 224.

The Third Circuit has consistently dismissed § 1983 procedural due process claims by

prisoners who fail to show conditions as extreme as in *Wilkinson*. *See, e.g.*, *Fantone*, 2015 WL

669290, at *4-5 (upholding dismissal for failure to state a claim where prisoner in a Restrictive

Housing Unit faced "far less restrictive constraints," with "markedly more human interaction and

bodily movement" than in *Wilkinson*); *Diaz v. Canino*, 502 F. App'x 214, 217-18 (3d Cir. 2012)

(concluding that "neither the conditions nor the length of [petitioner's] confinement" were

sufficient to affect a protected liberty interest, when plaintiff alleged that he spent one year in a

restrictive unit and was subjected to "continuous searches," "regular relocation of his cell," and

continuous light); *Bacon v. Minner*, 229 F. App'x 96, 98-99 (3d Cir. 2007) (upholding dismissal

of claims by prisoner in a "medium-high security housing unit" where recreation time was

reduced without notice and lighting was unpredictable and oppressive). Where the Third Circuit

has found a protected liberty interest, the conditions have involved a level of extreme deprivation

similar to that in *Wilkinson*. *See Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (finding

atypical and significant hardship where defendant was "confined in virtual isolation for almost

eight years," during which time he remained in his cell 23 hours a day, ate meals by himself, was denied contact with his family, and was prohibited from participating in any educational, vocational, or other organizational activities, and from visiting the library).

Here, Martinez alleges that inmates at Red Onion are "warehoused . . . in 11-by-8-foot cells with five-inch-wide slits for windows and slots in the 1 1/2-inch-thick steel doors for delivering meals or mail." (Dkt. No. 25 at ¶¶ 13-14). Beyond this and the fact that Red Onion is considered a "supermax" facility, he offers no facts from which the Court could infer that he is faced with an atypical, significant deprivation. Supreme Court precedent recognizes that prisoners may face a range of severity of confinement during the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 486-87 ("The regime to which [the prisoner] was subjected . . . was *within the range of confinement to be normally expected* for one serving an indeterminate term of 30 years to life.") (emphasis added); *Meachum*, 427 U.S. at 224-25 (no Fourteenth Amendment liberty interest is implicated when state prisoners are transferred from a medium security prison to a maximum security prison). Thus, even accepting as true the allegations that Martinez experienced greater restrictions at a supermax facility than at Golden Grove, this alone does not impose "atypical and significant hardship" so as to implicate a protected liberty interest. *See Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (finding no deprivation of a liberty interest when an inmate was transferred from a low-security to high-security correctional facility). *Cf. Powell v. Weiss*, 757 F.3d 338, 344 (3d Cir. 2014) (concluding that a transfer from a community correctional center to the general prison population did not implicate a protected liberty interest).

In his Second Amended Petition & Complaint, Martinez cites to and attaches a *Washington Post* article, which the Court may consider. *See Gautier*, 2014 WL 4412336, at *2 ("The Court looks to a complaint and any documents attached to or submitted with the complaint

in deciding a motion to dismiss.") (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). While the article discusses the tight security at Red Onion, it also describes Red Onion's "yard, where prisoners . . . can exercise and chat with other inmates." *See* Craig Timberg, "At Va.'s Toughest Prison, Tight Controls" (Apr. 18, 1999), http://www.washingtonpost.com/wp-srv/local/daily/april99/supermax18.htm.  This fact further supports a finding that the conditions at Red Onion do not rise to the level in *Wilkinson*, where inmates were "deprived of almost any environmental or sensory stimuli and of almost all human contact." *See Wilkinson*, 545 U.S. at 214.

Finally, Martinez argues that he has a protected liberty interest because the conditions at Golden Grove, from which he was transferred to a supermax facility, "were equivalent of a below-minimum security prison." (Dkt. No. 35 at 2, 5). In support, he alleges that: (1) some inmates wear personal street clothes rather than standard issue correctional uniforms; (2) some internal gates provide open access between buildings and recreation areas; (3) internal gates leading into housing units are unlocked; (4) doors into and between unit control rooms are unlocked; and (4) prisoners have the ability to move freely about the facility including moving to and from different housing units without being searched. (*Id.* at ¶¶ 22-30). Martinez primarily relies on a December 3, 2013 "Monitor's Baseline Compliance Assessment Report," filed in this Court in *United States v. The Territory of the Virgin Islands*, Case No. 86-cv-00265. (*See* 86-cv-00265, Dkt. No. 756, Exh. 1).[16]

---

[16] The purpose of the Monitor's Report in *United States v. The Territory of the Virgin Islands* is to "assess, measure, and determine progress toward partial and substantial compliance with all provisions of [the Settlement Agreement]" and to serve as a "tool to assist Defendants in developing action plans to systematically develop . . . policies, procedures, and administrative and operational changes and improvements." (86-cv-00265, Dkt. No. 756, Exh. 1). Because the Report is designed to focus on existing deficiencies and Defendants' progress in addressing them, the deficiencies identified therein cannot be deemed to be the standard by which to

Even accepting as true Martinez's allegations about low-security conditions at Golden Grove, and inferring in his favor that he had more freedom of movement and human contact at Golden Grove than at Red Onion, the Court still finds that Martinez has failed to plead facts sufficient to conclude that the conditions at Red Onion constitute the type of deprivations that impose atypical and significant hardship. As noted earlier, the mere fact that Martinez was transferred from a lower-security facility to a maximum-security facility does not suffice to meet Martinez's burden of establishing a protected liberty interest. *Meachum*, 427 U.S. at 224-25; *Fraise*, 283 F.3d at 522; *Powell*, 757 F.3d at 344; *see Mearin v. Dohman*, 2009 WL 3127760, at *7 (E.D. Pa. Sept. 29, 2009) (granting motion to dismiss on claim challenging transfer to supermax prison because "Plaintiff has not plead any facts to indicate that his transfer to S.C.I. Greene imposed an atypical and significant hardship in relation to ordinary prison life").

The Court has taken guidance from the Third Circuit's recent opinion in *Fantone*, where the Court upheld dismissal for failure to state a claim of a procedural due process violation by comparing the complained-of conditions to those in *Wilkinson*. *See Fantone*, 2015 WL 669290, at *4-5. Here, as in *Fantone*, Martinez has failed to plead a combination of factors such as indefinite solitary confinement, severe limitation of bodily movement, denial of human interaction, and automatic loss of parole eligibility. *See id.*; *see also Shoats*, 213 F.3d at 144. Thus, even with the additional facts in the Second Amended Petition & Complaint, Martinez

---

determine "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction." *See Griffin*, 112 F.3d at 706. Here, Martinez was convicted of second degree murder and sentenced to thirty-five years of imprisonment. (Dkt. No. 25 at ¶¶ 15-16). The Court concludes that the conditions at Red Onion, as alleged by Martinez, do not constitute a "significant, atypical hardship," but rather, are within the range of confinement that an inmate— convicted for this type of crime and sentenced to this period of incarceration—may reasonably expect to encounter. *See Sandin*, 515 U.S. at 486-87 ("The regime to which [the prisoner] was subjected . . . was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.").

cannot meet his burden of showing the requisite restrictions and deprivations at Red Onion to establish a protected liberty interest.

The Court concludes that Martinez has failed to plead sufficient facts that his transfer from Golden Grove to Red Onion implicated a protected liberty interest under the Fourteenth Amendment. This procedural due process claim—the basis for Counts 2, 3, and 4—is therefore subject to dismissal as a matter of law. *Fantone*, 2015 WL 669290, at *5. Accordingly, the Court will deny Martinez's Motion for Leave to Amend as futile. *See Hubbard v. Phelps*, 2009 WL 2970146, at *2 (D. Del. Sept. 15, 2009) (relying on *Wilkinson* and denying motion to amend complaint challenging transfer to protective isolation confinement because "plaintiff's proposed amendment does not contain allegations that he will be housed in protective custody for an indeterminate time or that the housing assignment affects the duration of his sentence").[17]

## D.     Remaining Motions

As the Court has dismissed all of Martinez's claims, it will deny as moot Martinez's "Motion for Preliminary Injunction" (Dkt. No. 26) and "Motion to Expedite Discovery" (Dkt. No. 38). The Court will also deny as moot the Government's Motion to Dismiss for failure to exhaust administrative remedies (Dkt. No. 27).

## III.   CONCLUSION

For the reasons set forth above, the Court will dismiss Martinez's "First Amended Petition & Complaint" (Dkt. No. 25) and deny his "Motion for Leave to Amend" (Dkt. No. 35).

---

[17] In his "Motion for Leave to Amend," Martinez also offers "language identifying Randall Mathena as the agent for the Virginia Department of Corrections" and "language showing the factual basis for the exercise of specific jurisdiction under the Virgin Islands' long-arm statute to Mathena based on the contacts with the USVI." (Dkt. No. 35 at 2). However, the Court need not reach the issue of personal jurisdiction over Mathena in view of its conclusion that Martinez has failed to plead facts sufficient to establish a protected liberty interest and, accordingly, the Court will not address Martinez's objections to the Magistrate Judge's recommendation on this issue. For the same reason, the Court will deny as moot Martinez's "Motion for Leave to Conduct Jurisdictional Discovery" (Dkt. No. 36).

The Court will deny as moot the following motions filed by Martinez: "Motion for Leave to Proceed *in Forma Pauperis*" (Dkt. No. 2); "Motion to Appoint Pursuant to the Criminal Justice Act" (Dkt. No. 3); "Motion for an Entry of Default Judgment *or in the Alternative* Motion to Compel the Filing of a Responsive Pleading" (Dkt. No. 12); "Motion to Expedite Preliminary Review" (Dkt. No. 19); "Motion for Preliminary Injunction" (Dkt. No. 26); "Motion for Leave to Conduct Jurisdictional Discovery" (Dkt. No. 36); and "Motion to Expedite Discovery" (Dkt. No. 38). The Court will also deny as moot the Government's Motion to Dismiss (Dkt. No. 27). The Court will adopt those portions of the Magistrate Judge's "Report and Recommendation" (Dkt. No. 28) that are consistent with this Memorandum Opinion.

An appropriate Order accompanies this Memorandum Opinion.

Date:   March 17, 2015                       _____/s/_____
                                             WILMA A. LEWIS
                                             Chief Judge